IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TARROUNCE MASSENGILL AND | § | |
| LASHEA JOHNSON-MASSENGILL, | § | |
| PLAINTIFFS, | § | |
| | § | |
| *v.* | § | Civil Action No. 3:25-CV-189-E-BK |
| | § | |
| CITY OF DESOTO, TEXAS, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. Before the Court is *Defendant City of Desoto's Motion to Dismiss Plaintiffs' Second Amended Verified Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.* Doc. 27. As discussed here, the motion should be **GRANTED.**

## I. BACKGROUND

In July 2023, Plaintiffs Tarrounce Massengill and LaShea Johnson-Massengill (collectively, "Plaintiffs"), filed their first suit in state court against Defendant, the City of Desoto ("the City" or "Defendant"), arising from the City's alleged failure to maintain a creek near their home.[1] Doc. 27-1 at 1-3. In that action, Plaintiffs asserted claims for negligence and inverse condemnation under Article I, Section 17 of the Texas Constitution, based on the City's installation of stormwater drainage pipes, which Plaintiffs alleged caused flooding and erosion of their property and resulted in unsafe living conditions. Doc. 27-1 at 2-3. In October 2024, the

---

[1] *Tarrounce Massengill and Lashea Johnson-Massengill v. City of DeSoto*, Cause No. DC-23-09534.

state court dismissed Plaintiffs' petition with prejudice pursuant to the City's governmental immunity.  Doc. 27-3 at 1.

In January 2025, Plaintiffs, proceeding without the assistance of counsel, filed the instant action in this Court.  Doc. 3.  In their Second Amended Complaint, Plaintiffs assert claims against the City for negligence, gross negligence, nuisance, and inverse condemnation under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 17 of the Texas Constitution.  Doc. 19 at 4-10.  As in their prior action, Plaintiffs' claims stem from "creek-related deterioration," which they allege has caused "structural and foundational damage to [their] home."  Doc. 19 at 3-4.  Plaintiffs further allege that they first observed the ongoing erosion and structural instability of the creek in 2013 and reported those conditions to City officials continuously after that time.  Doc. 19 at 3.  Plaintiffs contend that, espite providing notice to Defendant for more than a decade,  the City "failed to remedy the hazardous conditions," resulting in continued structural and foundational damage to their property.  Doc. 19 at 3-4.

Referencing the prior state court action, Defendant moves to dismiss Plaintiffs' present suit pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, among other things, that Plaintiffs' claims are barred by the doctrine of *res judicata*.  Doc. 27 at 1, 5-9.  Plaintiffs have filed a response, and Defendant has filed a reply.  Doc. 28; Doc. 30.

## II. Legal Standards

### A. Rule 12(b)(6)

A plaintiff fails to state a claim for relief under Rule 12(b)(6), when a complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To overcome a Rule 12(b)(6) motion, a plaintiff's

complaint "must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted).  Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While a court must accept the complaint's factual allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

A court ruling on a Rule 12(b)(6) motion may rely on the complaint, documents properly attached to the complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  Courts may take judicial notice of the record in prior related proceedings.  *Davis v. Bayless*, 70 F.3d 367, 372 (5th Cir. 1995); *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020).

### B.  Res Judicata

The doctrine of *res judicata* or claim preclusion "bars litigation of claims that either have been litigated or could have been raised in an earlier suit." *Test Masters Ed. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  Generally, a party cannot premise a motion to dismiss under Rule 12(b)(6) on the affirmative defense of *res judicata*.  *Moch v. East Baton Rouge Parish Sch. Bd.*, 548 F.2d 594, 596 n. 3 (5th Cir. 1977).  However, where the elements of *res judicata* are apparent from the pleadings and matters of which the Court may take judicial notice, "dismissal

3

under Rule 12(b)(6) is appropriate." *Basic Cap.*, 976 F.3d at 591 (cleaned up; quoting *Kahn v. Ripley,* 772 F. App'x 141, 142 (5th Cir. 2019) (per curiam)); *Lexxus Int'l, Inc. v. Loghry*, 512 F. Supp. 2d 647, 668-69 (N.D. Tex. 2007) (Lindsay, J.).

When a federal court is asked to give preclusive effect to a state court judgment, the court applies state *res judicata* principles. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000); *See Tejas Motel, L.L.C. v. City of Mesquite by & through Bd. of Adjustment*, 63 F.4th 323, 329, n.12 (5th Cir. 2023) (noting that "Texas law governs the preclusive effect of a judgment from Texas state court"). Under Texas law, a party seeking to have an action dismissed based on the doctrine of *res judicata* must show (1) a prior judgment on the merits by a court of competent jurisdiction; (2) that the same parties, or those in privity with them, were involved in the prior case; and (3) that the second action is based on the same claims that were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

## III. ANALYSIS

Defendant argues that the claims asserted in Plaintiffs' Second Amended Complaint are barred by *res judicata* because: (1) the state court's dismissal constitutes a final judgment on the merits; (2) the parties in the state court action are the same as those in the present case; and (3) the claims asserted in the instant action were either raised or could have been raised in the state court action. Doc. 27 at 6-7.

Plaintiffs do not meaningfully contest that the first two elements are satisfied. *See* Doc. 28 at 2-5. In both the state court action and the present case, Plaintiffs—Tarrounce Massengill and Lashea Johnson-Massengill—brought suit against the same defendant, the City of Desoto.[2]

---

[2] Although Plaintiffs' original complaint, Doc. 3, named only officials of the City of Desoto as defendants, these individuals were later dismissed from the suit pursuant to Plaintiffs' Second

4

*Compare*, Doc. 27-1 at 1, *with* Doc. 19 at 2.  Moreover, the Texas State Court issued a final judgment on the merits by dismissing Plaintiffs' claims with prejudice based on the City's governmental immunity.  Doc. 27-3; *see Tejas Motel*, 63, F.4th at 332 (holding that a dismissal for failure to "state a viable claim against an immune municipality" is an order "'on the merits' under Texas' rules of claim preclusion."); *see also Carrasco v. City of Bryan*, 515 F. App'x 325, 326 (5th Cir. 2013) (per curiam) (holding that a dismissal with prejudice on the basis of governmental immunity constitutes a final judgment under Texas law).  The sole issue is therefore whether the claims asserted in this action were either raised or could have been raised in Plaintiffs' prior state court suit.  *Amstadt,* 919 S.W.2d at 652.

Under Texas law, a "judgment in the first suit precludes a second action by the parties . . . not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which *might* have been litigated in the first suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992) (citation omitted) (emphasis added).  To determine whether a claim *might* have been raised in the first action, Texas courts follow a "transactional approach," under which "a final judgment on an action extinguishes the right to bring suit on the same transaction, or series of connected transactions, under which the action arose." *Dynex*, 976 F.3d at 592 (quoting *Barr*, 837 S.W.2d at 631).  This determination "necessarily requires an examination of the factual basis of the claim or claims in the prior litigation" and "an analysis of the factual matters that make up the gist of the complaint." *Barr*, 837 S.W.2d at 630.  "Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.* (citations omitted)

---

Amended Complaint, which instead asserted claims against the City of Desoto itself, rather than its employees.  Doc. 19 at 2.

Here, as in their state court action, Plaintiffs assert claims for inverse condemnation under Article I, Section 17 of the Texas Constitution, and for common law negligence. *Compare* Doc. 19 at 4-9, *with* Doc. 27-1 at 3-4. Plaintiffs also assert claims for gross negligence, nuisance, and inverse condemnation under the Fifth and Fourteenth Amendments of the U.S. Constitution, which were not explicitly asserted in the state court suit. Doc. 19 at 6-10. Plaintiffs argue that their claims are not barred by the transactional test for two reasons: (1) they assert new legal theories under federal law that could not have been raised in state court; and (2) their claims are based on "new factual developments" that post-date the state suit. Doc. 28 at 2, 4. The Court addresses each of these arguments in turn.

### A. Plaintiffs' Fifth and Fourteenth Amendment Claims Could Have Been Raised in State Court.

Plaintiffs argue that their inverse condemnation claims under the Fifth and Fourteenth Amendments are not precluded by their earlier assertion of an inverse condemnation claim under the Texas Constitution because the state court "did not—and could not—address federal claims." Doc. 28 at 3. In making this argument, Plaintiffs appear to advance two points: (1) that the state court "lacked authority to adjudicate [their] federal takings claims"; and (2) that federal takings claims require a different analysis than their claims arising under the Texas Constitution. Doc. 28 at 2-3. As explained below, both arguments are without merit.

It is well established that "[r]es judicata does not bar a claim if the court rendering judgment in the initial suit lacked subject matter jurisdiction over the claim." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 788-90 (E.D. Tex. 2000) (quoting *Montgomery v. Blue Cross and Blue Shield of Texas, Inc.*, 923 S.W.2d 147, 150 (Tex.App.—Austin 1996, writ denied)). Accordingly, when a federal claim falls within the exclusive jurisdiction of the federal courts, an earlier state court judgment cannot preclude a later

federal action asserting that claim.  *See, e.g., In re Lease Oil Litig.*, 200 F.3d 317, 321 (5th Cir. 2000)* ("Because federal antitrust claims are within the exclusive jurisdiction of the federal courts . . . those claims could not have been litigated in [state court]"); *In re Tusa-Expo Holdings, Inc.*, No. 8-45057, 2014 WL 6891295, at *3 (Bankr. N.D. Tex. Oct. 8, 2014) (holding that because bankruptcy claims fall within the exclusive jurisdiction of federal courts, the principles of res judicata did not bar a trustee from earlier state court action from pursing them in federal court). In evaluating whether a state court may hear a federal claim, however, the "default assumption" is that state courts enjoy concurrent jurisdiction over federal causes of action.  *Haywood v. Drown*, 556 U.S. 729, 735 (2009) (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).  This presumption may be rebutted only by "an explicit statutory directive," "unmistakable implication from legislative history," or "by a clear incompatibility between state-court jurisdiction and federal interests."  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981) (citations omitted).

Although Plaintiffs contend that the state court lacked authority to adjudicate their Fifth and Fourteenth Amendment takings claims, they identify no statute, legislative history, or other authority suggesting that the presumption of concurrent jurisdiction does not apply to these claims.[3]  *See* Doc. 28 at 2-3.  On the contrary, both the United States Supreme Court and Texas

---

[3] Plaintiffs cite *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985) for the vague assertion that their Fifth and Fourteenth Amendment claims "were not ripe for review in the state suit."  Doc. 28 at 3.  In *Williamson County*, the United States Supreme Court established the "state-litigation requirement," which held that a plaintiff seeking to assert a federal takings claim under the Fifth Amendment must first have unsuccessfully sought compensation through available state procedures, including the state judicial process.  *Tejas*, 63 F. 4th at 327 (citing *Williamson Cnty.*, 473 U.S. at 186, 193).  However, as Plaintiffs point out, this requirement was later overruled in *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019), which held that a Fifth Amendment takings claim becomes ripe when the government takes property without compensation.  Because Plaintiffs filed their state court petition in 2023, four years after *Knick*, the governing law made their federal takings claims immediately ripe.  *Id.*

courts have recognized that state courts may exercise jurisdiction over federal takings claims. *See San Remo Hotel, L.P. v. City and Cnty. of San Fransisco, Cal.*, 545 U.S. 323, 345-46 (2005) (observing that "Congress has not expressed any intent to exempt . . . federal takings claims" from the full faith and credit statute and rejecting the argument that state courts cannot hear state law and Fifth Amendment claims simultaneously); *Guetersloh v. State*, 930 S.W.2d 284, 288 (Tex. App.—Austin 1996, writ denied) (noting that "state courts clearly have jurisdiction to resolve takings claims based on federal law").  Because here, the state court was competent to exercise subject matter jurisdiction over Plaintiffs' Fifth and Fourteenth Amendment claims, these claims qualify as ones that *might* have been raised in the earlier action.  *Barr*, 837 S.W.2d at 631.

Moreover, as to Plaintiffs' second point, there is no meaningful distinction between the federal and state clauses at issue that would require a court to conduct a separate analysis.  The Fifth Amendment's Just Compensation Clause, as incorporated against the states through the Due Process Clause of the Fourteenth Amendment, provides that "Private property [shall not] be taken for public use, without just compensation."  U.S. CONST. amend. V*; Chi., B & Q.R. Co. v. City of Chi.*, 166 U.S. 266, 235 (1897).  Article I, Section 17 of the Texas Constitution similarly provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made."  TEX. CONST. art I, § 17.

Although the wording differs slightly, the Texas Supreme Court has described these provisions as "comparable" and has made clear that "Texas case law on takings under the Texas Constitution is consistent with federal jurisprudence."  *See Jim Olive Photography v. Univ. of Houston Sys.,* 624 S.W.3d 764, 771 (Tex. 2021) (internal quotations and citation omitted).

---

*Knick* therefore undermines, rather than supports, Plaintiffs contention that their claims were not ripe during the state suit.

Because a federal takings claim requires no elements beyond those necessary to assert a Texas takings claim, courts have held that adjudication of the state claim precludes a later federal takings claim based on the same facts, even if the federal claim was not expressly asserted in state court.  *See Payne v. United States*, No. 4:15-CV-246, 2016 WL 454899, at *5 (E.D. Tex. Feb. 5, 2016) (holding that res judicata barred plaintiffs from pursuing a federal takings claim, that was not raised or reserved in state court, where the state court had already dismissed their state takings claim based on the same facts); *see also Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362 (9th Cir. 1993) (holding that res judicata barred a federal takings claim even though the plaintiff did not explicitly plead federal constitutional violations in state court complaint, where the record reflected that the state court fully considered the plaintiff's Constitutional rights).  Accordingly, a plaintiff who wishes to pursue both federal and state takings claims has two options: raise both claims in state court to be tried together, or assert both claims in federal court, relying on supplemental jurisdiction over the state claim.  *See Migra v. Warren City Sch. Bd. of Educ.*, 465 U.S. 75 at 84-85 (1894) (explaining in the § 1983 context that a plaintiff may either litigate federal claims in the original state court action or obtain a federal forum by filing those claims in federal court first).

Because Plaintiffs did not pursue either of these available avenues, their failure to raise their federal takings claims in the prior state court proceeding does not foreclose the application of *res judicata*.  Accordingly, the doctrine will apply to bar Plaintiffs' present claims if they are based on the same facts as in their state Court action.  *Payne*, 2016 WL 454899, at *5.

## B. Plaintiffs' Claims Stem from a Common Nucleus of Operative Facts.

In determining whether claims arise from the same transaction, courts consider "whether the facts are related in time, space, origin, or motivation, whether they form convenient trial

9

units, and whether their treatment as a trial unit conforms with the parties' expectations[.]" *Barr,* 837 S.W.2d at 631. "Different theories of recovery based on the same operative facts do not generate different causes of action." *Sims v. City of Madisonville,* 894 F.3d 632, 645 (5th Cir. 2018) (citation omitted). The central inquiry is therefore whether the claims share the "same nucleus of operative facts." *Thompson v. Weaver,* 429 S.W.3d 897, 902 (Tex. 2014) (citation omitted).

In this instance, all of Plaintiffs' claims arise from the same alleged misconduct underlying their prior state court suit—namely, Defendant's alleged failure to properly maintain the creek behind Plaintiffs' property.[4] *Compare* Doc. 19 at 3-9, *with* Doc. 27-1 at 3-4. In both actions, Plaintiffs allege that Defendant acted negligently in ignoring their pleas to inspect, repair, or mitigate the creek's deterioration and resulting erosion. *Compare* Doc. 19 at 3-9, *with* Doc. 27-1 at 3-4. Although Plaintiffs now characterize Defendant's conduct as "gross negligence," the factual predicate remains the same. Doc. 19 at 7. The negligence claims relate in time, origin, and motivation to the same ongoing dispute and therefore arise from the same nucleus of operative facts.

Plaintiffs' nuisance claim, though not asserted in the prior action, is likewise based on Defendant's alleged "fail[ure] to maintain the creek and prevent flooding." Doc. 19 at 9.

---

[4] In their response, Doc. 27, Plaintiffs contend that their Second Amended Complaint also asserts a breach of statutory duty claim against the City that was not included in their state court petition. Doc. 27 at 4. However, this allegation also does not appear anywhere in their Second Amended Complaint. *See* Doc. 19 at 4-10. It is well settled that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.,* 429 F.3d 108, 113 (5th Cir. 2005) (citation omitted). Even if the claim were properly before the Court, however, it would nevertheless be barred by the doctrine of *res judicata* because it arises from the same factual circumstances as Plaintiffs' state court claims—namely, Defendant's failure to "maintain public infrastructure and mitigate hazards" related to the creek. *Compare* Doc. 19 at 4, *with* Doc. 27-1 at 3.

Because it seeks recovery for the same injuries under a different theory, the claim could have and should have been raised in the earlier suit. *Sims,* 894 F.3d at 645; *Musgrave v. Owen*, 67 S.W.3d 513, 520 (Tex. App. —Texarkana 2002, no pet.) (holding that claims arising from the same incident or seeking the same injuries share the same nucleus of operative facts, even if one claim requires proof of elements not required for the other).

Plaintiffs' inverse condemnation claims also arise out of the same circumstances as their state takings claim. In the state action, Plaintiffs alleged that repeated flooding of the creek caused significant erosion to their property, constituting a taking under Article I, Section 17 of the Texas Constitution. Doc. 27 at 2-4. Similarly, here, Plaintiffs allege that "continuous erosion, flooding and physical intrusion onto Plaintiffs' property" amounts to a taking in violation of the Fifth Amendment and Fourteenth Amendments, as well as Article I, Section 17 of the Texas Constitution. Doc. 19 at 8-9.

Despite the overlapping facts, Plaintiffs contend that their claims are not barred by *res judicata* because they arise from "new factual developments," including "worsening erosion post-dating the state suit." Doc. 28 at 5. But "subsequent wrongs by a defendant constitute new causes of action not barred by res judicata" only when those wrongs occur *after* the prior suit is filed or the judgment is entered. *Sacks v. Tex. S. Univ.*, 83 F. 4th 340, 345 (5th Cir. 2023) (cleaned up). Here, Plaintiffs do not allege that the worsening erosion resulted from any action by Defendant occurring after they filed their first petition or received judgment in the prior suit. Doc. 28 at 5. Rather, they seek relief for the continuing effects of the same alleged harm. Doc. 28 at 5. Under Plaintiff's theory, each new instance of flooding and resulting damage would entitle Plaintiffs to file another lawsuit, regardless of how many judgments have already been awarded in favor of Defendant. This is precisely the type of repetitive litigation the doctrine of

*res judicata* is intended to prevent. *See Barr,* 837 S.W.2d at 629 ("The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery.").

Because all of Plaintiffs' claims arise from the same nucleus of operative facts as those asserted in the prior state court action, they could have been raised previously. Therefore, Plaintiffs' claims are barred by the doctrine of *res judicata* and should be dismissed with prejudice.

## IV.   LEAVE TO AMEND

Ordinarily, *pro se* litigants should be afforded an opportunity to amend their complaint before dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted). However, leave to amend is not required if the plaintiff has already pleaded their "best case." *Id.* Here, Plaintiffs have had two opportunities to amend their complaint to state a valid claim against the Defendant. *See* Doc. 12; Doc. 19. As outlined above, the claims asserted in their Second Amended Complaint suffer from deficiencies that are not curable by amendment. Because Plaintiffs have neither asserted, nor demonstrated, that they have a valid claim that would survive the *res judicata* bar, the Court concludes that any additional amendment would be futile.

## V.   CONCLUSION

For the foregoing reasons, *Defendant City of Desoto's Motion to Dismiss Plaintiffs' Second Amended Verified Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,* Doc. 27, should be **GRANTED**, and Plaintiff's claims should be summarily

**DISMISSED WITH PREJUDICE**.  And as no claims will remain pending, the Clerk of Court should be directed to close this case.

  **SO RECOMMENDED** on February 27, 2026.


                    _____
                    RENEE HARRIS TOLIVER
                    UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis

for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).